UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARY BETH PAZARAS,

              Plaintiff,

  -v-                                                         5:14-CV-1227

ONONDAGA COUNTY,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF JAMES D. HARTT<br>*Attorney for Plaintiff*<br>70 Linden Oaks, 3rd Floor<br>Rochester, NY 14625 | James D. Hartt, Esq. |
| ONONDAGA COUNTY DEP'T OF LAW<br>*Attorneys for Defendant*<br>John H. Mulroy Civic Center<br>421 Montgomery Street, 10th Floor<br>Syracuse, NY 13202 | Carol L. Rhinehart, Esq. |

DAVID N. HURD
United States District Judge

**TABLE OF ABBREVIATIONS**

CBA: Collective Bargaining Agreement

CSEA: Onondaga Local 834 of Civil Service Employees Association, Inc.

E-911: Department of Emergency Communications Control Center

EEOC: Equal Employment Opportunity Commission

NYSDHR: New York State Division of Human Rights

1

PSD: Public Safety Dispatcher

PSSS: Public Safety Shift Supervisor

QAR: Quality Assurance Review

## MEMORANDUM-DECISION and ORDER

### I. INTRODUCTION

After a 911 dispatch center call ended with a house fire fatality, the dispatch center engaged in a six month long internal investigation into the event. During the ongoing internal investigation, plaintiff Mary Beth Pazaras, one of the subjects of said investigation, filed gender discrimination complaints against the 911 dispatch center. This is the unfortunate backdrop of the instant action.

Defendant Onondaga County employed plaintiff as a Public Safety Dispatcher at its Department of Emergency Communications Control Center. Plaintiff filed this Title VII action, alleging that her employer retaliated against her for filing gender discrimination complaints with the Onondaga County Department of Personnel and the New York State Division of Human Rights. That is the only cause of action.

Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposed. Oral argument was heard in Utica, N.Y. on January 8, 2016. Decision was reserved.

### II. BACKGROUND

Unless otherwise noted, the following facts are undisputed.

Defendant is a municipal corporation and operates the Department of Emergency Communications Control Center ("E-911" or "dispatch center"). Plaintiff commenced her

employment at E-911 in 1997, as a Public Safety Telecommunicator. In 1999, she was promoted to civil service Public Safety Dispatcher ("PSD"). Plaintiff has an unremarkable disciplinary history, aside from an oral reprimand for calling a male employee an "ignorant asshole" in 2007 or 2008.

The Commissioner of the 911 dispatch center is responsible for the operation of the call center, establishing and implementing policies and procedures with respect to fire, police and emergency dispatch, and managing necessary staff. Like all employees, plaintiff is required to adhere to E-911 Policy and Procedure Directives Manual, and Onondaga County Work Rules. In accordance with these directives, plaintiff may be subject to disciplinary action. Plaintiff's employment is governed by the collective bargaining agreement ("CBA") between defendant and the Onondaga Local 834 of Civil Service Employees Association, Inc. ("CSEA").

As noted, the instant action stems from a house fire call on November 29, 2012 that ended with a fatality. Plaintiff was the County Fire/EMS Dispatcher on the call. Shortly after the November 29 event, a Quality Assurance Review ("QAR") was conducted per E-911 policy. The QAR identified a delay in dispatching appropriate fire resources by plaintiff.[1] As a result of the QAR, the Commissioner asked the Public Safety Shift Supervisor ("PSSS") to conduct a fact-finding investigation. The PSSS returned his report to the Commissioner on December 3, 2012, recommending a full internal investigation of

---

[1] While not directly relevant to the issue at hand, plaintiff disputes the QAR findings. Plaintiff contends that the delay in dispatch was not a result of her error. Instead plaintiff contends that she contacted the fire department, but did not receive a response. She contends that the Baldwinsville Fire Department failed to acknowledge or respond to her initial dispatch.

the event based upon his finding of "a nearly five minute delay" in dispatching appropriate fire resources. Def.'s Stmt. Mat. Facts, at ¶15.

On January 10, 2013, plaintiff was notified that she was the subject of an internal investigation. On May 7, 2013, defendant alleges plaintiff received an email from the Commissioner, expressing his intention to interview her within a few weeks. Plaintiff disputes this fact, and instead contends that the Commissioner indicated that the investigation was "wrapped up" by May 7. Pl.'s Stmt. Mat. Facts, at ¶18.

On June 14, 2013, plaintiff filed an employee harassment and gender discrimination complaint with the Onondaga County Department of Personnel. Plaintiff also filed a complaint with the New York State Division of Human Rights ("NYSDHR") on the same day.

Plaintiff was finally interviewed by the Deputy Commissioner on July 1, 2013, with respect to the November 29, 2012 house fire call. On August 29, 2013, the Commissioner concluded the internal investigation. The investigation found that plaintiff "had violated Department policy and procedure, and work place rules, and [the Commissioner] recommended that disciplinary action be taken with respect to plaintiff." Def.'s Stmt. Mat. Facts, at ¶23. The investigation also found fault with plaintiff's shift supervisor, and recommended disciplinary action based upon that individual's violations of department policy and procedure. Defendant contends that the Commissioner next consulted with the Onondaga County Law Department and Department of Personnel regarding the investigation and recommendation.

On December 2, 2013, after completing its investigation, NYSDHR returned a determination. NYSDHR found no probable cause to believe defendant had engaged in

the gender discriminatory practices complained of by plaintiff and dismissed her June 14, 2013 complaint. Defendant contends that it received the determination on December 5, 2013, but plaintiff disputes this fact.

On December 3, 2013, defendant issued a written reprimand to plaintiff for her action regarding the November 29, 2012 house fire call. The reprimand was issued within the 15-month statutory time frame set forth in the CBA, and plaintiff challenged this disciplinary action, pursuant to the terms of the CBA. On January 28, 2014, plaintiff filed a second complaint with NYSDHR and EEOC, alleging discrimination based on retaliation. Thereafter, CBA arbitration hearings were conducted on January 15, May 15, and June 8, 2014.

Plaintiff commenced this civil action on October 7, 2014. On September 7, 2015, the arbitrator issued a decision that found plaintiff was, in fact, guilty of the charges alleged in the written reprimand, and that said reprimand was appropriate. At the time of this action, plaintiff is still employed as a PSD by defendant at E-911.

## III. LEGAL STANDARDS

### A. Summary Judgment

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of

N.Y., 426 F.3d 549, 553 (2d Cir. 2005). Such a fact is genuinely in dispute only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of genuine issue of material fact as to a dispositive issue. Celotex, 477 at 323. If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment, who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in its favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see Anderson, 477 U.S. at 250 (stating that once the movant meets its initial burden, the opposing party must show, through affidavits or otherwise, that a material issue of fact remains for trial). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48.

Importantly, a court considering a motion for summary judgment "cannot try issues of fact; it can only determine whether there are issues to be tried." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36-37 (2d Cir. 1994) (citations omitted). In making this determination, a court resolves any ambiguities or inferences to be made from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553.

6

## B. Title VII Burden Shifting Analysis

At the summary judgment stage, Title VII claims are evaluated under the three part "pretext" or McDonnell Douglas analysis. Hicks v. Bains, 593 F.3d 159, 164 (2d Cir. 2010); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

The burden shifting analysis begins by requiring the plaintiff to establish a prima facie case of retaliation by a preponderance of the evidence. See Hicks, 593 F.3d at 164. Plaintiff's burden in this regard is "de minimis." Id. Plaintiff must show: (1) she engaged in protected activity; (2) defendant was aware of said activity; (3) an employment action or decision that was adverse to plaintiff; and (4) a casual link between the protected activity and the adverse employment action. Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010).

Once plaintiff establishes each essential element of retaliation, the burden shifts to the employer who is then compelled to articulate a legitimate, non-discriminatory reason for the unfavorable employment action it took with respect to the plaintiff. Richardson v. N.Y. State Dep't of Corr. Servs., 180 F.3d 426, 443 (2d Cir. 1999). Upon the proffer of a neutral reason, the burden returns to the plaintiff to prove her protected activity was a "but-for" cause of the alleged adverse employment action. Univ. of Tex. Sw. Med. Ctr. v. Nassau, 133 S. Ct. 2517, 2533 (2013).

## C. Establishing Causation in a Claim for Retaliation

Since defendant concedes the first three elements of a prima face case, the motion hinges on causation, the fourth and final element of retaliation.

A causal link may be established by either: (1) direct evidence of retaliatory animus directed against plaintiff by defendant employer; or (2) indirect evidence showing that the

7

protected activity was closely followed by discriminatory treatment or through disparate treatment of fellow employees who engaged in similar conduct. See Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

Plaintiff has not shown any direct evidence, nor has it shown disparate treatment to support causation. Therefore, the focus must be on whether plaintiff has shown by a preponderance of the evidence that an indirect causal link may be inferred, because her protected activity was followed closely in time by the adverse employment action. See Thomson v. Odyssey House, 2015 U.S. Dist. LEXIS 125887, at *64 (E.D.N.Y. Sept. 21, 2015).

"There is no bright line rule concerning the temporal proximity required to draw the causal inference." Id.; see, e.g., Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 110-11 (2d Cir. 2010) ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship."); see also Ruhling v. Tribune Co., 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (finding that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); Cunningham v. Consol. Edison Inc, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (same); Hussein v. Hotel Employees & Rest. Union, Local 6, 2002 WL 10441 (S.D.N.Y. Jan. 3, 2002) (finding that the passage of more than two months defeats any retaliatory nexus); Ponticelli v. Zurich Amer. Ins. Group, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998) (finding that a "two-and-a-half month[]" interval "is hardly the close proximity of time . . . for allowing a plaintiff to establish the 'causal connection' element") (citation omitted); see also Hollander v.

8

Amer. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (three and a half months insufficient); Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); Ashok v. Barnhart, 289 F. Supp. 2d 305, 315 (E.D.N.Y 2003) ("[A] period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related"); Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.").

## IV. DISCUSSION

The timeline of events is undisputed, but bears repeating here. Defendant began a full internal investigation into the November 29, 2012 house fire call on January 10, 2013. Plaintiff did not engage in protected activity until June 14, 2013, when she filed gender discrimination complaints with the Onondaga County Department of Personnel and New York State Department of Human Rights ("NYSDHR"). On August 29, 2013, the internal investigation concluded with the recommendation that plaintiff and her supervisor be disciplined. On December 2, 2013, NYSDHR returned a "no probable cause" determination, which essentially "exonerated" the defendant of any wrongdoing with respect to plaintiff's gender discrimination complaint. Defendant disciplined plaintiff through a written reprimand on December 3, 2013.

Plaintiff contends that, by waiting until December 3, 2013 to reprimand plaintiff for the November 29, 2012 events, just one day after NYSDHR returned its rejection of

9

plainitff's gender discrimination complaint on December 2, 2013, defendant retaliated against plaintiff for filing the gender discrimination complaints.

First, the temporal connection is too attenuated. It is undisputed that the protected activity took place when plaintiff filed the complaints on June 14, 2013. However, the investigation predates the complaint and began on January 10, 2013. The investigation concluded on August 29, 2013, with a recommendation to discipline plaintiff. This decision was rendered more than two months after the complaints were filed. However, defendant did not actually issue the written reprimand until more than five months after the complaint. Given this series of events, plaintiff has failed to establish by a preponderance of the evidence that the reprimand was issued *in retaliation for* plaintiff's gender discrimination complaint. At worst, defendant waited for the NYSDHR determination before issuing the reprimand that was planned since August 29, 2013. While this may have been a strategic maneuver, it does not become a retaliatory act or even impermissible. Indeed, "employers need not suspend previously planned [adverse employment action] upon discovering that a Title VII suit has been filed, and their proceedings along lines previously contemplated, though not yet definitely determined, is not evidence whatsoever of causality." Clark Cnty. Sch. Dist. v. Bredeen, 532 U.S. 268, 272 (2001).

Likewise, the scope of protected activity does not include an agency determination. Plaintiff's "protected activity" occurred when she filed the two gender discrimination complaints on June 14, 2013, and was not extended to December 2, 2013, when NYSDHR rendered its "no probable cause determination." The litany of cases cited supra look to *plaintiff's activities* when establishing a temporal connection between the protected

10

activity and the adverse employment action. There is no temporal connection between the June 14, 2013 complaint and the December 3, 2013 reprimand.

Second, even assuming, arguendo, that defendant delayed reprimanding plaintiff until it received the NYSDHR determination, there are other factors that militate against finding a causal link between her complaint and the written reprimand. For example, plaintiff's supervisor received an oral reprimand for his involvement in the November 29, 2012 event. Thus, plaintiff was not singled out by the investigation, nor was she the only person reprimanded as a result. Moreover, defendant may have delayed reprimanding plaintiff until it received the NYSDHR determination, but plaintiff has failed to show that this determination was the sole or even the motivating factor for her reprimand. In fact, defendant recommended discipline months before receiving the determination.

And even crediting plaintiff's arguments that the timing is inherently suspect, defendant was squarely within the 15-month statute of limitations for issuing a reprimand. Likewise, plaintiff willingly engaged in arbitration pursuant to the terms of her collective bargaining agreement ("CBA"). The arbitration determination of September 7, 2015 is a post facto justification of defendant's decision to discipline plaintiff. Specifically, the arbitrator found that plaintiff was guilty of the charges of the written reprimand and that the reprimand was appropriate. However, a negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee. Alexander v. Gardner-Denver, 415 U.S. 36, 60 n.21 (1974). But an arbitration decision "that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link." Collins v. N.Y. City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002). Where the arbitrator's decision is based on substantial evidence, plaintiff must proffer "strong evidence that the

11

decision was wrong as a matter of fact – e.g. new evidence not before the tribunal – or that the impartiality of the proceeding was somehow compromised." Id. Plaintiff has failed to show, aside from a few conclusory allegations, that the arbitration was compromised. Thus, plaintiff is bound by the arbitration decision that the reprimand was, in fact, the proper result of her actions in response to the house fire call of November 29, 2012.

## V. CONCLUSION

As a result, plaintiff has failed to show by a preponderance of the evidence that there was a causal link between the filing of her gender discrimination complaint on June 14, 2013 and the reprimand of December 3, 2013.

Therefore it is

ORDERED that

1. Defendant's motion for summary judgment is GRANTED; and

2. The complaint is DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

_____
United States District Judge

Dated: January 25, 2016
        Utica, New York